GERRY STORTI *vs.* INDUSTRIAL TRUST COMPANY.

JULY 21, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Capotosto, J.   This is an action in assumpsit to recover money paid out by the defendant under alleged forged endorsements upon two checks drawn by the plaintiff, a depositor of the defendant bank.   The case was tried in the superior court before a justice thereof sitting without a jury, and at the conclusion of the evidence he rendered a decision for the defendant.   The case is before us on plaintiff's exception to that decision and to certain rulings during the trial.

It appears in evidence that in February 1946 the plaintiff, needing fixtures to start a restaurant, went several times to the place of business of the Rhode Island Store Fixture Co. on North Main street in the city of Providence, which concern to his knowledge was conducted by "The Kenners." A certificate of registration filed with the city clerk of Providence under the provisions of general laws 1938, chapter 386, shows that the R. I. Store Fixture Co., hereinafter generally referred to as the company, was a trade name and that Kate Kenner was its sole owner.   The business of the company was apparently carried on by her husband Morris Kenner, who, acting under a power of attorney from his wife, had authority to endorse checks payable to the company as Morris Kenner or M. Kenner, attorney.

Shortly after plaintiff's visits to the company's store he became acquainted, at an auction sale, with Max Kenner,

a son of Kate and Morris Kenner. Believing that Max was connected with the company, the plaintiff informed him of his requirements and, following Max's suggestion, he met him at the company's store on North Main street to select the fixtures. On February 15, 1946 Max met the plaintiff at his place of business and wrote out a contract of sale of certain fixtures therein described upon terms not necessary to mention here. The contract was written on paper with the printed heading, in letters almost half an inch high, "Rhode Island Store Fixture Co.," followed by the words "Complete Store Outfitters" in smaller type. Underneath this heading was the address "168 North Main Street—Tel. DExter 5286—Providence, Rhode Island." This was the same store that the plaintiff knew as the Kenners' place of business and where he went with Max to select the articles.

The contract acknowledges payment of $500 and is signed "M. Kenner." That payment was made by plaintiff's check of even date, February 15, 1946, drawn on the defendant and payable to the "R. I. Store Fixtures Co." The next day Max endorsed the check "R. I. Store Fixture Co.," followed this endorsement with the signature "M. Kenner," and cashed it at defendant's bank.

Between February 15 and February 27 the plaintiff went to the company's store several times and complained about the delay in delivering the fixtures. On the day last mentioned Max called at the plaintiff's place of business and told him that he could not deliver the fixtures because he required more money, whereupon the plaintiff gave him another check for $500 drawn on the defendant bearing that date and also payable to the company. In return therefor he was given a receipt, which Max wrote in his presence on the stationery of the company hereinbefore described. Max signed the receipt "R. I. Store Fix—Co—M. Kenner." This second check was endorsed by Max in the same manner as on the previous occasion and it was paid to him by the defendant on the same day.

When only a few articles were thereafter delivered, the plaintiff again complained to Morris Kenner and, apparently receiving an unsatisfactory answer from him to the effect that Max was doing business for himself and not for the company, he notified the defendant that it had paid the two checks in question to the wrong person. Several conferences with defendant's officials followed, in one of which its attorney told the plaintiff, according to the latter's testimony, "not to give any of the fixtures back, to hold onto the fixtures. * * * not to give them up." This testimony was not denied. As no tangible result came from such conferences, the plaintiff instituted the present action.

For an understanding of the situation disclosed by the record before us it is necessary to refer briefly to the testimony of Morris Kenner and of Max Kenner, the latter being the only witness for the defendant. In his deposition, which was taken at the instance of the defendant but was put in evidence by the plaintiff, Morris Kenner testified that neither he nor the company knew anything about the contract for fixtures hereinbefore described, and that the company neither expected nor received any money from the plaintiff on that contract. He further testified that he sold some fixtures to his son Max to sell on his own account; that his son and not the plaintiff owed the company for those fixtures; that when Max spoke about the checks involved in this case the father told him to endorse the checks so that the latter could pay his bill; that he did not know whether Max used the company's letterheads in his personal dealings; and that the letterheads upon which he wrote the contract and receipt herein mentioned were those of the company. Max Kenner's testimony in substance was that he did business on his own with the plaintiff; that the company had nothing to do with the transaction; that he used the company's name in carrying on his own business; and that he had authority from his father to receive and endorse checks made out in that name in transactions that did not concern the company.

The trial justice based his decision on the ground that Max Kenner did business with the plaintiff *"for"* his father and mother "under the firm's name"; that the father had authorized him to endorse the checks; and that therefore the defendant was not liable. (italics ours) In our judgment the trial justice clearly misconceived the evidence, which, when considered as a whole, conclusively leads to a contrary conclusion. We are not here concerned with whether Morris and Kate Kenner by their conduct held out Max as an agent of the company in the sale of the goods. It is plain to us that the plaintiff honestly believed that he was doing business with the company; that Max deceitfully induced him to continue in that belief; that the plaintiff intended to and did make the checks payable to the company and not to Max personally under such name; and that Max thereafter converted the money received on those checks to his own use and advantage.

In this case the checks were not drawn to a fictitious or nonexistent person so as to be payable to bearer, nor are there intervening equities of third parties. Here the defendant, on direct application, paid checks of its depositor on an alleged forged or unauthorized endorsement of the payee therein named without making any inquiry in reference thereto. When a bank receives money to be checked out by a depositor, it undertakes to pay out such money only as he shall order. The depositor has the right to assume that the bank, before paying his check, will ascertain the genuineness of the endorsement. If it pays money on a forged or unauthorized signature, the depositor being free from blame or negligence, the bank and not the depositor must bear the loss.

In the instant case the defendant concedes that the plaintiff was free from blame or negligence in the matter. It, however, contests liability on two grounds: first, that the plaintiff was dealing with Max Kenner individually and that Max, as he testified, was using the name of his mother's business, hence the checks were really made

payable to him and were properly collected by him; second, that the checks were payable to the R. I. Store Fixture Co. and that Kate Kenner, through her husband and manager, Morris Kenner, agreed to the collection of the checks by Max. Both of these contentions are entirely without merit.

The first contention is unsound because, disregarding all the other evidence in the case, defendant assumes that the testimony of Max is undisputed and credible, whereas as a matter of fact it is contradicted by evidence that seriously affects its credibility. It is clear that throughout this transaction the plaintiff was led by Max to believe that he was the agent of the company and that plaintiff was doing business with the company, the payee of the checks. For that reason, it is our judgment that the authorities cited by the defendant, which apply the so-called actual intent rule, are inapplicable in the circumstances here. See 22 A. L. R. 1229-1253 Anno. The instant case is plainly governed by *Tolman* v. *American National Bank,* 22 R. I. 462.

Defendant's second contention is equally unsound in that it relies on an alleged grant of authority by Morris Kenner purporting to authorize Max to endorse and to cash the checks in question. Morris Kenner, himself only an agent, would have no such authority especially over checks which, according to his own testimony, were in payment for goods that neither he nor the company sold to the plaintiff. Whatever may be concluded as to the holding out of Max as an agent of the company in the sale, the evidence does not support the conclusion that as between the plaintiff and his depositary bank the plaintiff intended the checks for Max personally, or that Max was authorized to endorse and cash them for the company.

The plaintiff's exception to the decision of the trial justice is sustained. In view of this conclusion plaintiff's other exceptions need not be considered. The defendant may appear before this court on October 3, 1949 and show cause, if any it has, why the case should not be remitted

to the superior court with direction to enter judgment for the plaintiff in the sum of $1000.

*Joseph Mainelli*, for plaintiff.

*Hinckley, Allen, Tillinghast & Wheeler*, for defendant.